# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Wilson and Atlantic Bullion & Coin, Inc., ) ) ) ) Plaintiff, ) ) v. ) ) Jim Dodds, ) ) Defendant. ) _____) | Civil Action No. 8:15-cv-00561-JMC<br><br><br><br><br><br>**ORDER AND OPINION** |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendant Jim Dodds ("Defendant") to recover grossly excessive payments received by Defendant as a return on his investment in the Wilson-AB&C Ponzi scheme.[1]

This matter is before the court on Defendant's Motion to Reconsider Order Denying Defendant's Motion to Compel (ECF No. 49). Specifically, Defendant seeks reconsideration of the Order that was entered by the court on November 8, 2016 (the "November Order"), denying Defendant's Motion to Compel (ECF No. 40). (ECF No. 48 at 5.) Plaintiff opposes Defendant's Motion asserting that it should be denied. (ECF No. 50 at 1.) For the reasons set forth below,

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." United States v. Wilson, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In Wilson, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain . . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return– sometimes in excess of 200 percent." Id. at ECF No. 17 at 1.

1

the court **GRANTS IN PART** Defendant's Motion to Reconsider.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the court appointed Receiver in <u>In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc.</u>, C/A No. 8:12-cv-02078-JMC, ECF No. 1 (D.S.C. July 25, 2012), a case related to the instant matter. Plaintiff alleges that "[o]n February 29, 1996, Defendant made an initial 'investment' [in the Wilson-AB&C Ponzi scheme] of $28,300.00." (ECF No. 1 at 4 ¶ 24.) "Subsequently, Defendant made eight additional 'investments' totaling $306,500.00 between December 2000 and April 2009, for a total investment of $334,800.00." (<u>Id.</u> ¶ 27.) Plaintiff further alleges that "Defendant received $1,532,983.00 in returns [from the Wilson-AB&C Ponzi scheme] between March 2004 and December 2011, resulting in a profit of $1,198,183.00." (<u>Id.</u> at 5 ¶ 26.)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced the instant action against Defendant on February 6, 2015, asserting claims for fraudulent transfer (in violation of the Statute of Elizabeth, S.C. Code Ann. § 27-23-10 (2014) and/or the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. Ann. §§ 726.101–726.201) and unjust enrichment. (ECF No. 1 at 1 ¶ 1 & 6 ¶ 38–8 ¶ 52.) On June 6, 2016, Defendant filed a Motion to Compel (ECF No. 40) seeking "[t]he contents of files kept by [Wilson] and [AB&C] for those investors who filed a claim with the Receiver." (<u>Id.</u> at 3.) Plaintiff filed a Response in Opposition (ECF No. 43) on June 23, 2016, to which Defendant filed a Reply on July 5, 2016. (ECF No. 46.) After the court entered the November Order, Defendant moved for reconsideration on December 6, 2016. (ECF No. 49.)

## II.     JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the Complaint "is so related to the In Re Receiver, 8:12-CV-2078-JMC case and the underlying criminal case, United States v. Wilson, et al, 8:12-cr-00320[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy."  (ECF No. 1 at 1 ¶ 3.)  The court may properly hear Plaintiff's state law claims for fraudulent transfer and unjust enrichment based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

## III.     LEGAL STANDARD AND ANALYSIS

In his Motion to Reconsider, Defendant did not identify the basis for his request.  The court agrees with Plaintiff that Rule[2] 54(b) provides the only appropriate avenue for the relief Defendant seeks at this time.  (See ECF No. 50 at 2–3.)

A.     Applicable Standard under Rule 54(b)

Rule 54(b) provides the following:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Id.  Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003); see also Moses H.

---

[2] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, but has held motions under Rule 54(b) are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." Am. Canoe Ass'n, 326 F.3d at 514; see also Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance. See U.S. Home Corp. v. Settlers Crossing, LLC, C/A No. DKC 08-1863, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co., C/A No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); Akeva L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005). Therefore, reconsideration under Rule 54 is appropriate on the following grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. Beyond Sys., Inc. v. Kraft Foods, Inc., C/A No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an[] interlocutory order.") (citing Am. Canoe Ass'n, 326 F.3d at 514).

B.     The Parties' Arguments

Defendant moves the court "to reconsider its November 8, 2016 Order and compel the production of files kept by Ron Wilson for those investors who filed a claim with the Receiver." (ECF No. 49 at 1.) In support of his request, Defendant argues that he needs the files of other

participants in the Wilson-AB&C Ponzi scheme to demonstrate that his participation in the scheme was as an ordinary prudent person since "the actions of Ron Wilson and AB&C would not 'arouse the suspicion of an ordinarily prudent [person].'"  (Id. at 2 (quoting Coleman v. Daniel, 199 S.E.2d 74, 80 (S.C. 1973)).)  In this regard, Defendant argues that the requested evidence demonstrates that "he acted as an ordinarily prudent person" when he invested in the Wilson-AB&C Ponzi scheme and is therefore similarly situated to the net losers.  (Id. at 3, 4.)  Additionally, Defendant argues that the court failed to address his in pari delicto defense.  (Id. at 4; see also ECF No. 53 at 3.)

Plaintiff opposes the Motion to Reconsider asserting that Defendant has failed to allege "any change in controlling law," or "new evidence" or "clear error of law nor manifest injustice."  (ECF No. 50 at 4.)  Plaintiff further asserts that Defendant in his Motion to Reconsider merely reargues arguments presented in the Motion to Compel and, therefore, he fails to demonstrate an appropriate basis to reconsider the November Order under Rule 54(b). (Id.)

C.     The Court's Review

Defendant seeks reconsideration of the court's decision in the November Order to deny him access to the files of Wilson-AB&C Ponzi scheme investors in Plaintiff's possession.  In reaching its decision to deny Defendant's Motion, the court determined that the information about other investors was relevant to neither Plaintiff's claims for fraudulent conveyance and/or unjust enrichment nor Defendant's defenses to these claims.  (ECF No. 48 at 4.)  As stated in the Reply in support of his Motion, Defendant asserts that the court's findings result in a manifest injustice to him.  (ECF No. 53 at 1, 3.)  Manifest injustice occurs where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the

5

Court by the parties, or has made an error not of reasoning but of apprehension . . . ." Campero USA Corp. v. ADS Foodservice, LLC, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (citations omitted).

In considering the parties' arguments, the court acknowledges that the third element of a fraudulent conveyance claim requires Plaintiff to demonstrate that Defendant "had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer was being made, which would disclose the fraudulent intent of the maker." Ashmore v. Taylor, 2014 WL 6473714, at *4 (citing Coleman v. Daniel, 199 S.E.2d 74, 80 (S.C. 1973) ("The transaction is subject to attack if at the time of the transfer the transferee had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer was being made, which would disclose the fraudulent intent of the maker.")). To defend against this attempt by Plaintiff, Defendant cannot rely solely on his own testimony. See C.J.S. Negligence § 115 (2016) ("Whether or not a person exercised a proper degree of care is not to be determined by reference to his or her own personal judgment in the situation, and ordinary care may exist notwithstanding a mistake in judgment."). In this regard, the court is persuaded that the November Order results in a manifest injustice to Defendant because it precludes him from developing evidence to defend against allegations that he was on notice of circumstances regarding the Wilson-AB&C Ponzi scheme that would arouse the suspicion of an ordinarily prudent person. Accordingly, the court finds that Defendant is entitled to reconsideration of the November Order as to the foregoing.

Defendant also seeks reconsideration of the November Order based on his contention that Plaintiff's claims are barred by the doctrine of in pari delicto. "The doctrine of in pari delicto is

6

'[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" Myatt v. RHBT Fin. Corp., 635 S.E.2d 545, 547 (S.C. Ct. App. 2006)) (quoting Black's Law Dictionary 794 (7th ed. 1999)). "In South Carolina, this doctrine precludes one joint tort-feasor from seeking indemnity from another." Id. (citations omitted). "However, there are important 'limitations and exceptions' to the doctrine, including the specific requirement that 'public policy implications' be considered." Bell v. Kaplan, C/A No. 3:14CV352, 2016 WL 815303, at *4 (W.D.N.C. Feb. 29, 2016) (citing Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985) ("the classic formulation of the in pari delicto doctrine itself require[s] a careful consideration of such [public policy] implications before allowing the defense.")).

In considering application of the in pari delecto defense in a situation where a receiver stands in the shoes of the wrongdoer, the South Carolina Court of Appeals affirmed the trial court's determination that the receiver's claims[3] were barred by in pari delicto holding "that, in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate fraud may not seek recovery against an alleged third-party co-conspirator in the fraud." Myatt, 635 S.E.2d at 548. However, the Myatt court expressly stated that its holding was based on the fact that the Receiver was seeking tort damages and not diverted funds:

> Similarly, the Receiver in the present case was seeking tort damages from the Bank for its actions regarding the accounts. The Receiver was not seeking to recover diverted funds from the Bank. Thus, relying on the Knauer decision, we hold that, in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate fraud may not seek recovery against an alleged third-party co-conspirator in the fraud. In this case, the Receiver does not dispute the fact that Dunlap, the president of both Elfindepan and SAF, used these corporations to perpetrate a fraud on investors. The apparent sole purpose for the existence of these corporations was to perpetuate the investment scheme.

---

[3] In Myatt, the Receiver alleged "causes of action for breach of contract, breach of fiduciary duty/constructive fraud, negligence/gross negligence, negligent supervision, unfair and deceptive trade practices, and aiding and abetting a breach of fiduciary duty." 635 S.E.2d at 546.

7

> Moreover, the Bank handled the accounts exactly as it was bound to do pursuant to the account agreements. Thus, Receiver did not make any claim against the Bank for fraudulent conveyance. Therefore, the trial court properly applied the doctrine of in pari delicto in granting the Bank's motion for summary judgment.

Id. at 548. Based on the foregoing, the court finds that in pari delicto does not bar the Receiver's claims in this action because he is not seeking tort damages, but has asserted claims of fraudulent conveyance and unjust enrichment to obtain equitable relief for victims of the Wilson-AB&C Ponzi scheme from Defendant who is alleged to have profited from the illegal scheme. In re Worldwide Wholesale Lumber, Inc., 372 B.R. 796, 810 (Bankr. D.S.C. R. 2007) ("The doctrine also does not apply when a receiver is seeking recovery of diverted funds for a corporation from the beneficiaries of wrongdoing.") (citing Myatt, 635 S.E.2d at 548).

## IV.     CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, the court hereby **GRANTS IN PART** Defendant Jim Dodds' Motion to Reconsider Order Denying Defendant's Motion to Compel (ECF No. 49). Within seven (7) days of the entry date of this Order, Defendant shall select twenty (20) investor files from the list of claimants available at In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., C/A No. 8:12-cv-02078-JMC, ECF No. 193-1 (D.S.C. July 25, 2012), and Plaintiff shall produce said files within fourteen (14) days of their identification.[4] In accordance with this decision, the parties are instructed before this disclosure to jointly submit a confidentiality order to ensure the privacy of the information contained in the disclosed files. As a result of the foregoing, the court **DENIES** Defendant's request (ECF No. 53 at 3) "to certify this ruling to the Fourth Circuit Court of Appeals" because he has failed to provide specific argument as to how the issues addressed in

---

[4] The court finds that twenty (20) files are an appropriate proportional sample for purposes of amended Rule 26 of the Federal Rules of Civil Procedure.

the November Order and the instant Order satisfy the prerequisites for granting certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

February 1, 2017
Columbia, South Carolina

9